(No. 23055.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAM GERDY, Plaintiff in Error.

*Opinion filed December 16, 1935.*

Louis Greenberg, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, John T. Gallagher, and Richard H. Devine, of counsel,) for the People.

Mr. Justice Herrick delivered the opinion of the court:

The defendant, Sam Gerdy, was by the verdict of a jury in the criminal court of Cook county found guilty of the crime of robbery while armed with a dangerous weapon and sentenced to the penitentiary. He brings the record here for review on writ of error.

Edna Hotchkiss testified that she was a high school teacher; that she entered the First National Bank of Englewood shortly before 1 :00 o'clock P. M. on September 6, 1934, for the purpose of cashing fourteen checks representing back pay due her as a teacher; that during about a ten-minute period, while she was endorsing the checks at a desk near the front door of the bank, a man was standing about two feet from her. ' She was conscious of the fact that he was looking at her and her suspicions were aroused. No one else was near her in the bank. She noticed the man did not wear glasses, had a very dark-olive complexion, very dark, kinky, wavy hair, had a slight scar on his forehead, wore a brown suit with plaited pockets in the coat, and a brown felt hat set rather far back on his head. When she completed the endorsement of the checks she deposited a part of the funds and took $1350 in money,

which she placed in her hand-bag. She left the bank shortly after 1:00 o'clock. From the bank she walked a short distance, carrying her hand-bag, and entered her automobile. As she was about to start it another car was driven alongside, from which a man jumped to the pavement and then stepped onto the running-board on the driver's side of her car. The window on that side was down. The man put a gun to her face and said, "Hand over that bag." The bag was at that time lying in her lap. She struggled with him for a very short time. The man got possession of the bag, ran to his car and drove away. There was another man in the car with him. The prosecutrix stated that the man who held her up was the same man who had been watching her in the bank; that at the time of the hold-up it was a bright, sunny, warm day; that the robber had on a cap and dark glasses but still wore the same brown suit, his cap was back and a lock of his hair was over his right eye, and she could see his face very "decidedly" and also his hair.

Miss Hotchkiss went to the police station on September 10 and there pointed out the defendant in a line-up with five other men and positively identified him as being the man who robbed her. She later identified him in the felony court. In the trial court she was very emphatic in her identification, and testified that at the police station the defendant had on the same brown suit with plaited pockets, the same brown hat he had worn in the bank, and that she identified him not only by his clothing but particularly by his hair, his complexion, and by a slight scar on his forehead. Officers Hoffman and Burke were present when Miss Hotchkiss identified the defendant in the show-up line the day of the arrest, and testified that her identification was then certain and unequivocal.

Officer Hoffman, who arrested the defendant four days after the hold-up, testified that when arrested the defendant said that on September 6 he had been riding around

with a friend, had been several places, and would have to check up and find out where he had been.

The defense offered was an alibi and the good reputation of the defendant. Four men testified to his reputation.

The defendant denied holding up Miss Hotchkiss, denied ever being in the bank, although conceding it is not far from his home and that he had driven by it, admitted owning one brown suit with plaited pockets, but claimed it was in Light's cleaning shop on September 6. He further testified that on the day of the alleged robbery he left his home about 10:45 A. M. with Michael Underberg, a friend of long standing, drove to the place of business of a mechanic named Johnstone, where he stayed about 45 minutes; then drove to Casto's tavern, arriving there about noon and remaining about 45 minutes; went next door to Sims' ice cream parlor, where he stayed about 25 or 30 minutes; there checked up and opened a pin-game machine which he owned; also had a sandwich and coffee; that he left Sims' confectionery shortly after 1:30 and drove home, and that Mike Underberg was with him all this time. The defendant stated he never knew he had a scar over his left eye until Miss Hotchkiss testified about it. During the trial, at the request of the defendant's counsel, the defendant stood before the jury for the purpose of being viewed by it.

Mike Underberg, an unemployed clerk, substantially corroborated the testimony of the defendant as to the time and places they visited on September 6. Mrs. George Riley, employed in Sims' confectionery, said she came to work each day between 12:30 and 1:00 o'clock, and that the defendant, Underberg and Casto came in one day after she began work, but she could not remember the date. Nicholas Maritello, a bar-tender employed in Casto's tavern, remembered defendant and Underberg coming into the tavern on September 6 close to 1:00 o'clock; that they remained there about 45 minutes, but he could not remember the names of any other customers in the place at that time.

Johnstone, the mechanic, recalled the defendant and Underberg being in his place for a short time on September 6 shortly before noon, but said be kept no record and was testifying from memory, only. Andrew Daley, a newspaper driver, first said he came to Casto's tavern on September 6 about 12:30, remaining 15 or 20 minutes, and that defendant was there when he left. The witness later admitted he could not be sure whether the day was the 5th or 6th. Casto testified he operated a tavern at Eighty-ninth and Loomis; that defendant and Underberg came there on September 6, between 12:00 and 1:00 o'clock; that he went with them to Sims' confectionery, next door, where defendant opened the pin machine and made a division of the nickels taken out. He said he did not keep any records but was testifying from memory. Jacob Light, tailor and cleaner, testified he had known the defendant several years and cleaned his clothes; that he took in two suits of defendant on August 31, one gray and one brown, but the brown suit was taken out about 6:00 P. M., "Thursday after Labor day. Must be the 5th or 4th," and finally said Thursday after Labor day was the 6th.

Samuel Cutts, a clothing merchant, testified for the defendant that he had sold the defendant a brown suit. He was asked, "How many brown suits, the same as you sold Sam Gerdy, would you sell around Sixty-third and Halsted?" An objection to this question by the People was sustained. The defendant excepted, and here complains it was error to sustain the objection. The period sought to be inquired of was not limited to a reasonable time immediately prior to September 6. The question as asked was clearly improper, and the trial court ruled correctly in sustaining the objection.

The defendant charges the court committed error in giving to the jury the following instruction as to the form of their verdict:

"If you find the defendant guilty, you may sign this form of verdict: 'We, the jury, find the defendant, Sam

Gerdy, guilty of robbery in manner and form as charged in the indictment, and we further find from the evidence that at the time of the commission of said robbery the defendant was armed with a dangerous weapon, to-wit, with a pistol, ' " etc.

It is urged that since the defendant was indicted on two counts, one for robbery and one for robbery with a gun, it was the duty of the court to give a form of verdict by which the defendant might be found guilty of the lesser offense of robbery. All of the evidence on the subject of the robbery was that it was committed by a man then and there armed with a pistol, and there was no conflict on that issue. The court, under the record here, was warranted in giving the instruction attacked. Moreover, the defendant did not request the court to give a form of verdict covering the lesser offense, and having failed to do so he can not now complain. (*People* v. *Funk,* 325 Ill. 57.) A form of not guilty verdict was given the jury, with proper instructions relative thereto.

It is finally insisted that the guilt of the defendant was not established beyond a reasonable doubt. Although the defendant's identity was established by only one witness, her identification of him, as shown heretofore by the statement of her evidence on that subject, was unusually minute and complete. The record shows that she had an opportunity to see him clearly at close range, both in the bank and at the car. A case will not be reversed because of the fact that there was only one identifying witness, where the testimony of such witness is credible and the jury is convinced of the defendant's identity and of his guilt beyond a reasonable doubt. *People* v. *Schanda,* 352 Ill. 36; *People* v. *Fortino,* 356 id. 415; *People* v. *Gasior,* 359 id. 517.

The verdict against the defendant received the approval of the trial court, who saw and heard the witnesses testify. The law has committed to the jury the decision of controversial factual issues, and where there is sufficient evi-

dence to convict and the verdict is not against the manifest weight of the evidence, this court will not reverse a conviction merely because the evidence is conflicting, and thereby substitute its judgment for that of the jury. *People* v. *Bolger,* 359 Ill. 58; *People* v. *Fitzpatrick,* 359 id. 363; *People* v. *Abelsky,* 359 id. 387.

All errors argued have received careful consideration. We are of the opinion the defendant received a fair trial, and we are not disposed to disturb the verdict.

The judgment of the criminal court of Cook county is affirmed. *Judgment affirmed.*