People of State of Illinois, Defendant in Error, v. Aleazer Burrell, Plaintiff in Error.

Gen. No. 44,266.

254 

Opinion filed April 21, 1948. Released for publication May 7, 1948.

H. R. WILLIAMS, of Chicago, for plaintiff in error; W. G. MORGAN, of Chicago, of counsel.

WILLIAM J. TUOHY, State's Attorney, for defendant in error; JOHN T. GALLAGHER, MELVIN S. REMBE, W. S. MIROSLAWSKI and JOHN L. HENRICK, Assistant State's Attorneys, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

A writ of error was sued out of this court to review an order revoking the probation of the defendant. He was convicted in July 1945 of larceny of an automobile. In August 1945 he was placed on two years' probation. He was arrested June 21, 1947, when less than a month remained of the period of his probation, after being accused of stealing a woman's purse. We presume from the record before us that he was brought before the Boys' Court on a complaint of larceny of the purse. While the case was pending in the Boys' Court he was taken July 1, 1947, before the Criminal Court and charged with violation of the conditions of his probation. The evidence of violation was heard the same day. The following day July 2 the order of revocation was entered. He was sentenced to the penitentiary under the original conviction to a minimum of one year and a maximum of three years.

We further presume from the record that the defendant was thereafter bound over to the Grand Jury and indicted for larceny of the purse, despite the fact that the probation had been revoked and sentence imposed. We infer that he was arraigned. The record does not show what disposition was made of the indictment.

Defendant contends he should have been allowed an opportunity to procure counsel and that the State was required to prove the violation beyond a reasonable doubt and that it failed to do so.

Under Sections 1 and 2 of the Probation Act (Chap. 38, Pars. 784 and 785, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 37.771, 37.772]) Courts of Criminal and Quasi-Criminal jurisdiction are given power to grant probation in cases, exceptions are enumerated, "where it appears to the satisfaction of the court, both that the defendant is not likely again to engage in an offensive or criminal course of conduct and that the public good does not require that defendant shall suffer the penalty imposed by law." Section 3 provides that probation may be granted "if it shall appear to the satisfaction of the court, both that there is reasonable ground to expect that the defendant may be reformed and that the interests of society shall be subserved." Section 6 deals with violations of the condition of probation. Any time during probation the court may, upon report of the probation officer or other satisfactory proof of violation, revoke and terminate the probation. Upon being brought before the court a rule to show cause may be entered upon him "and judgment entered and sentence imposed upon the original conviction and release upon bail shall be allowed as in other cases." If the "court shall be of the opinion that the interests of justice do not require the imposition of sentence," the probationer may be discharged from arrest and recommitted to the probation officer. If the court's opinion is otherwise, sentence shall then be imposed. In Section 15 the Appellate Courts are given "jurisdiction finally" to review any order changing or modifying or terminating the probation period and to affirm or reverse to meet the provision of the Act and to best subserve the interests of justice and society.

■ Defendant cites no authority to support his contention that the requirement for the order should have been proof beyond a reasonable doubt. To meet this contention the State relies upon *People v. Kuduk,* 320 Ill. App. 610; *Burns v. United States,* 287 U. S. 216, 53 Sup. Ct. Rep. 154; *Dillingham v. United States,* 76 Fed. (2) 35; *Furrow v. United States,* 46 Fed. (2) 647; and *State v. Everett,* 164 N. C. 399, 79 S. E. 274.

In the *Burns case* the trial court recessed to permit the attendance of counsel. The Supreme Court in affirming the order of revocation, held that the question on appeal was whether the trial court abused its discretion; that while probation is a matter of grace, a probationer should have fair treatment; that there is no question of formal procedure; and that the hearing there, though summary, was not improper or inadequate. In the *Furrow case* defendant had counsel, the order of revocation was affirmed and the Circuit Court of Appeals (4th) said that it "would perhaps be better practice to give one charged with violation of probation notice in writing as to the charges against him"; and that "Evidence of bad conduct may be sufficient for revoking probation, although such conduct does not prove commission of a new crime." In the *Dillingham case* the Circuit Court of Appeals (5th) affirmed the order of revocation and said that formal hearings and procedure were unnecessary, but that they were had in that case; and that it was enough if it were made sufficiently to appear that probationers had violated the conditions of the probation. In the *Everett case,* the Supreme Court of North Carolina affirmed the order of revocation and said that defendant was not on trial for an offense, was not entitled to a jury trial, and the question was one of fact to be determined in a wise discretion. In the *Kuduk case,* defendant had counsel at the trial. This court in affirming the order of revocation said that the question on review was whether the court abused its discretion and that proof

beyond reasonable doubt was not a requirement at the hearing. We conclude that the State was not required to prove the violation beyond a reasonable doubt.

In none of the foregoing cases was there any question of the defendant's identity in the conduct, basis of the revocation proceedings. In the case before us the vital question is not whether the conduct charged was sufficiently proved to warrant the revocation. It is whether the defendant was the actor. Defendant denied he was. We cannot see that any showing less than the most convincing proof of this issue would satisfy the requirements of justice. Because the case against the probationer was pending in the Boys' Court we presume he was a minor at the time of the hearing on the violation.

The bill of exceptions indicates that the rule to show cause pursuant to section 6 of the Probation Act, Chap. 38, Par. 789, Ill. Rev. Stats. [Jones Ill. Stats. Ann. 37.776] was entered and the hearing had thereon while the defendant was at the bar. There is no express provision in the Act for a hearing or a method of procedure. The court's opinion with respect to the interests of justice is the principle of determination. The nature of the proceeding and the charge against the probationer are further guides in the exercise of the court's discretion. *Burns v. United States,* 287 U. S. 216. Defendant here was not represented by counsel as is shown by the following colloquy:

> "The defendant: I have no attorney.
> The Court: Who is your attorney?
> The defendant: Supposed to be Wood.
> Papanek: Wood says he does not represent him."

The proceeding was informal. There was no cross-examination of witnesses against defendant. Except for a few questions put by the trial court no one questioned defendant in developing his defense.

■ We think a fair inference from the colloquy between the court, the probationer and the States Attorney is that he wanted counsel, thought he had an attorney, but that for some reason that attorney did not consider himself employed to defend the probationer. We are not unmindful of the rule set forth in *People v. Foster*, 394 Ill. 194, affirmed, 332 U. S. 134, with respect to a court's duty to appoint counsel for a defendant. The record before us plainly indicates that the defendant wanted an attorney and thought he had one. We think that justice required that he be given some opportunity to determine whether he had an attorney and if he did not have one, to obtain one. On the other hand if, for some reason, the court did not see fit to continue the hearing, the defendant should have been offered the services of the Public Defender.

Geneva Franklin, the victim of the larceny, identified defendant at the hearing. She testified that before she boarded a west bound 47th Street car at St. Lawrence Avenue in Chicago, she had opened her purse to get her fare; that she then noticed the defendant looking at her and her money; that he boarded the car after she and her little baby got on; that while she was bending down to pick up the baby after they were on the car, defendant reached into her pocket, took her purse, ran through the car to the front and that she noticed her purse was missing and shouted, "Don't let anybody off. A man has my pocketbook"; that she did not see where defendant went after he got off the car at South Park Avenue; that after she got off the car she was told he had run into Walgreen's store at the southeast corner; that she pointed defendant out to a policeman; that defendant was then standing at the Walgreen corner near a mail box with a magazine; that the defendant told the policeman that he did not take the purse; that the purse was not found and that the policeman searched the defendant, finding

money upon him including a $5 bill "yellow with age", which the witness identified as having been in the purse; and that there was no doubt that defendant was the man who had taken her purse.

The policeman testified that he saw the defendant alight, but lost sight of him as he went west on 47th Street; that he pursued and caught a man whom "the people" said was the thief; that "they" then said the man was not the thief; that Geneva Franklin identified defendant, who was across the street; that this was about 3 minutes after the witness got off the car; that he recognized defendant as the one he saw get off; that he searched defendant and found money in three of his pockets; that in one bundle he found "$44, folded up this way"; that Geneva Franklin said she lost one ten, two fives and two singles and that one of the five dollar bills was "yellow with age"; that in the bundle there were two tens, four fives and four singles; that defendant could not explain how much money he had, or in what denominations it was or where he got the unusual five dollar bill; that defendant told the officer he had not ridden on the 47th Street car; and that the officer found a transfer in defendant's pocket.

Defendant denied having been on the car and having taken the purse. He says he boarded a Cottage Grove Avenue car near his home, got off at 47th Street and walked west. He said that Geneva Franklin told the officer that she could not say that defendant had stolen her purse. She denied making the statement. He said he was employed and had money in the bank and did not need to steal and that his probation was served, all but one month. Probation records corroborated defendant's story that he worked at a shoe shining parlor with earnings of about $35 a week, and that he reported at the probation office regularly.

At the close of the testimony the Assistant States Attorney Papanek told the court that he did not think

the boy had told the truth and that he could "not make out both of these people liars." The court said defendant had been on probation for two years, with no trouble. The following day, July 2nd, the court found the conditions of the probation had been violated.

We think it is clear that had the defendant had an attorney at the hearing, extended cross examination would have been justified in attempting to resolve doubts and ambiguities in the testimony. In the "bundle" found by the policeman there were two tens, four fives and four singles. There were one ten, four fives and two singles in the purse. According to the police officer there was only three minutes between the time he says he saw defendant alight from the street car and the arrest. This would have given defendant three minutes to go from the street car to Walgreen's, add one ten and two single dollar bills to the bills taken from the purse of Geneva Franklin, make a bundle of it, put it in his pocket, dispose of the purse and obtain a magazine. The testimony is not clear as to whether the policeman was on the front platform of the street car when the defendant alighted or after he alighted. If the first, one would wonder why he did not apprehend him, after Geneva Franklin cried out, before he alighted. If the second, why he pursued another man. The "people" pointed out the man whom the policeman pursued, but "a man" also told Geneva Franklin that the man who alighted ran across into Walgreen's. The street car transfer is not in the record. We cannot say it was issued on the 39th or 47th Street car. We presume the trial court saw and considered the transfer in its decision. Defendant did not deny that he had a transfer, but it must be remembered that he was not represented by counsel, and it is probably not to be expected that every point of the accusation against him would be covered by his mere recital, unaided by questioning.

We think justice requires that the revocation order be reversed and the cause remanded to the trial court for rehearing in accordance with the purposes of the Probation Act and with the views expressed herein.

*Reversed and remanded.*

LEWE, P. J., and BURKE, J., concur.