(No. 31453.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WALTER TOMASZEWSKI *et al.*, Plaintiffs in Error.

*Opinion filed May 18, 1950—Rehearing denied September 18, 1950.*

ROMAN E. POSANSKI, of Chicago, (CHARLES D. SNE-WIND, of counsel,) for plaintiffs in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, both of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

On February 14, 1949, the grand jury returned an indictment of two counts in the criminal court of Cook County against the defendants, Walter Tomaszewski and Edward Tomaszewski, who are brothers. The first count charged robbery with a pistol, while the second count charged simple robbery. On a joint trial before a jury, defendants were found guilty of armed robbery and each was sentenced to the Illinois State Penitentiary for a term of one year to life. They jointly prosecute this writ of error.

At 1:15 A.M. on February 10, 1949, two men entered a tavern owned by Michael Andrychowski at 4201 W. Augusta Boulevard, Chicago. Present were Adeline Andrychowski, who was tending bar, and seven patrons, among them being Sam DeCanio, George Kubica and John Pesko. From their testimony it appears that a man, identified as Walter Tomaszewski, who was wearing a brown jacket, entered a side door of the tavern, and simultaneously Ed-

ward Tomaszewski, who was wearing a green jacket, entered the front door with a gun in his hand. Edward ordered all occupants of the tavern to the rear and directed them to lie down on the floor. When Kubica turned to see who had entered, he was struck in the head with the gun by Edward, and when Pesko started to Kubica's assistance, the gun was pointed at him. Thereafter all persons laid down on the floor as ordered, whereupon Edward went behind the bar and rifled a cash register and drawer of $286 and a necklace belonging to the bartender, Adeline. Edward then came to the rear of the room and searched the pockets of the patrons taking varying sums from each. During the entire period, which was estimated at ten minutes, Walter remained standing at the end of the bar with his hands in his pockets. When Edward had finished with the patrons, the two left the tavern, profanely warning their victims not to move for five minutes. Within a few minutes after their departure the police were notified. Five minutes later a squad car came to the tavern and a description of the robbers was given to an officer named Trogstead. Half an hour later another squad car came to the tavern and took Adeline, DeCanio, Kubica and Pesko to the police station to identify two men who had been taken into custody. They proved to be the defendants, whom each of the witnesses identified as the men who had perpetrated the robbery.

The details of defendants' apprehension were given by some of the participating police officers. Thomas Tyrell testified that he and his partner, Thomas Wilson, were cruising in a police car at 1:30 A.M. February 10, 1949, when a radio call alerted them to look for two men about thirty years old, one wearing a tan jacket and the other a green jacket. Shortly thereafter, while in the vicinity of Cicero Avenue and Lake Street, their suspicions were aroused by a car containing two occupants which was traveling at an excessive rate of speed. The car sped away when they turned their spotlight on it so they gave chase.

Several turns were made before the car being pursued turned into an alleyway at 4651 Fulton Street, its lights were turned out and two men abandoned it, the officers being one hundred twenty-five feet away at the time. The police car was stopped on the street and officer Tyrell proceeded on foot. After a search of the buildings he discovered Edward Tomaszewski lying prone on a back porch, took him into custody and returned to the police car. He stated that as Edward came off the porch with his hands up, he said: "I'm glad to see you officer, two unknown men jumped into the car and forced me to do this act." A search of Edward produced only his wallet with a small amount of money and identification papers.

Another police officer, Charles Rawleigh, testified that he was in the squad car with Trogstead which had answered the call from the tavern; that while there a radio report came that Tyrell's car was pursuing a suspicious auto on Cicero Avenue, and that he, Trogstead, and McCarthy, drove to the area and stopped at 4651 Fulton Street when they saw other police cars. In searching the area these officers found Walter Tomaszewski lying on the ground beside a building and took him into custody. The car which had been abandoned was searched by officer Mueller, who found an automatic pistol on the floor of the front seat, $506 in currency and silver in the glove compartment, and about a case of assorted whiskey, some cartons of cigarettes and boxes of cigars in the back seat. In the box containing the whiskey he found a necklace which Adeline Andrychowski identified at the trial as being the one which had been taken from the cash drawer of the tavern. The pistol found in the car was identified by Adeline, DeCanio and Kubica as looking like the one carried by the defendant Edward Tomaszewski.

Defendants testified in their own behalf denying participation in the robbery. Edward, who was employed as a car salesman, stated that he had remained at his home

the night of February 9, 1949, from 6:15 P.M. to 11:30 P.M., at which time he received a phone call from a friend inviting him to go fishing in Barrington; that he went to Walter's house, arriving at midnight, roused Walter from bed and sent him to rent a car to make the fishing trip. Defendant stated that he went to a nearby tavern at Western and Hirsch streets; that Walter arrived with the car shortly before 1:00 A.M. and that the two of them remained at the tavern until 1:15 A.M. He further testified that he got behind the wheel of the car and drove west on North Avenue intending to go to Barrington; that when they had halted at a traffic signal at Cicero and North Avenues, two men entered the back seat, placed something against his head and said: "Get going;" that he drove as directed and on running a stop light saw the spotlight of another car flashed on them; that shortly thereafter one of the men in the rear wrenched the wheel and turned the car into an alley, where witness put on the brakes, called to Walter to jump, and himself ran from the car leaving the two men behind. Defendant stated that he ran into a passage-way, laid down on a porch to be out of the way of any shooting, and was found there by officer Tyrell. He stated that when taken to the police station the officer told the identifying witness: "Here are the two men who held up your tavern," and that he did not hear any of the witnesses identify him or his brother. On cross-examination he disclaimed any knowledge of the contents of the glove compartment or back seat of the car he was driving; denied that he had been at or robbed the tavern at 4201 Augusta Blvd. that evening, or that he had ever seen the pistol found in the car.

In support of Edward's testimony his wife and mother testified that he was home on the evening of February 9 until 11:30 P.M., as the wife said, or 12:00 A.M., as the mother said.

Defendant Walter Tomaszewski testified that he was a foreman and truck driver for a bedding company and that he had remained at home the evening of February 9, 1949, until awakened by Edward, who asked him to go fishing. He told of how he had rented the car under the name of Walter Thomas, the English derivation of his name which he sometimes used, after which he returned to the tavern near his home and joined Edward. His account of what occurred after they left the tavern coincided with the testimony of Edward. He stated that he started to run when the car stopped; that after going a short way he fell, became unconscious and knew nothing until he came to and found himself in custody of the police. He stated that while at the police station he was struck, pushed, threatened and burned with a cigarette by officers who were questioning him. He, too, testified that the police had told the identifying witnesses: "Here's the two men who held you up." Walter denied that any of the witnesses had identified him by his features, but stated he had been identified only by the clothing he wore. He admitted that he had previously served three years in the penitentiary for robbery. On cross-examination he could not say how the whiskey and cigarettes had gotten into the back seat of the car, but said that the two men who entered the car had a package with them when he first saw them.

Walter's story as to his movements on the night of February 9, 1949, were substantiated by his wife. Other witnesses called testified to the good reputation of each defendant in the community.

In rebuttal the People called officers Rawleigh, Trogstead, Tyrell and Wilson, who denied that the identifying witnesses had been told that defendants were the two men who had held up the tavern; or that defendants had been subjected to any mistreatment; or that more than two men had left defendant's car when it stopped in the alleyway

off Fulton Street. To rebut Edward's statement that he had never before seen the pistol found in the car, officer Rawleigh testified that in the presence of Edward, Walter, Trogstead, Michael Andrychowski, and others, he asked Walter if it was his gun and he said: "No it is not my gun, but it belongs to my brother Edward;" that he then asked Edward if it was his gun, and the latter replied: "I brought it back from overseas as a souvenir gun." Andrychowski and Mahacek corroborated that this conversation had occurred, but defendants on surrebuttal denied that the pistol was ever discussed. Adeline Andrychowski, DeCanio, Kubica and Pesko also testified in rebuttal that the officers' had not pointed out defendants to them nor told them to make the identification by defendants' clothes. Each of these witnesses restated that they had made positive identification of the defendants as the men who held up the tavern.

It is the first contention of defendants that the foregoing evidence does not prove them guilty beyond a reasonable doubt. This assertion is largely based on the argument that little weight can be given to an identification where a defendant is brought alone before a prosecuting witness who knows that the person under arrest is to be presented for this purpose. It is urged that the proper procedure is to have witnesses pick out the guilty party from a number of persons unknown to the witnesses, and without suggestion from any officer or interested person. The contention that the identifying witnesses in this case acted only after broad suggestions on the part of the police, is borne out in the record only by the testimony of the defendants which was rebutted by the witnesses themselves. Defendants rely on *People* v. *Sanders,* 357 Ill. 610, and *People* v. *Botulinski,* 383 Ill. 608, in which it was said that identification procedure such as used in the present case, impairs, if it does not entirely destroy, the evidence of identification. The facts presented in those cases were

entirely different from the circumstances which surround the identification of the present defendants. Here, four witnesses made positive identification within an hour after the robbery had occurred, and all four witnesses had ample opportunity to view defendants at the time of the robbery. The elements of elapsed time and diversity of opinion among the witnesses, which was true in the cases relied upon, are not present as a circumstance which would impair or destroy the evidence of identification. The testimony of one witness as to identification, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. *People* v. *Mosher,* 403 Ill. 112; *People* v. *Leach,* 398 Ill. 515; *People* v. *Minor,* 388 Ill. 436; *People* v. *Eckman,* 380 Ill. 413.

Along with actual identification, the clothes worn by defendants coincided with those described to the police when the robbery was reported before defendants were arrested. The finding of the pistol and the necklace in the car which they abandoned, is another evidentiary circumstance which links them with the crime. The jury heard the evidence, together with the alibi testimony offered by the defense, and it was for it to determine the weight and credence to be given the witnesses. This court will not disturb a verdict of guilty unless it is palpably contrary to the weight of the evidence, or is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendants' guilt. (*People* v. *Holt,* 398 Ill. 606; *People* v. *Hicks,* 362 Ill. 238.) The jurors heard and saw the witnesses and had the opportunity to evaluate their testimony, including that relating to identification of the defendants and its circumstances. We cannot say that the nature of the evidence is such as to raise a reasonable doubt of defendants' guilt.

It is next urged that the court committed error in permitting a witness to testify in violation of an order which had excluded witnesses from the court. The witness re-

ferred to was Julia Mahacek, who was allowed to testify on rebuttal as to what was said with regard to the owner- ship of the gun when defendants were questioned by the police. After this witness had stated that she was at the police station on the morning of February 10, 1949, when officer Rawleigh was questioning defendants about the gun, she was asked, "What was said about the gun?" In response she started to say: "I was the victim of a holdup * * *." Defendants' counsel objected and the court admonished the witness that she was to tell only what was said about the gun and nothing else. It is now contended that this remark was highly prejudicial and aggravates the trial court's abuse of discretion in letting the witness appear at all. A trial court is vested with discretion in permitting a witness to testify even after an order excluding witnesses has been entered. (*People* v. *O'Malley,* 404 Ill. 165; *People* v. *Sink,* 374 Ill. 480; *People* v. *Godsey,* 334 Ill. 11.) Since the testimony of the witness here was confined to the issue of what was said about ownership of the gun, and was identical with that of other rebuttal witnesses called, we are of the opinion that the trial court did not abuse its discretion in allowing her to testify. Her unresponsive answer that she was the victim of a holdup, as defendants' counsel points out, could only, by broad inference, be said to establish that the defendants had held her up. Such inference was removed from the minds of the jury by the prompt action of the trial court in admonishing the witness and limiting her testimony.

It is next urged that the court erred in refusing to submit to the jury a form of verdict on the second count of the indictment which charged simple robbery as compared to robbery with a gun, charged in the first count. Defendants state that the court "refused" to give the jury such a verdict. Though the record does not show that such a verdict was given, at the same time there is no showing of refusal on the part of the court. If defendants desired

that a form of verdict for the lesser offense be given, it was their duty to prepare and ask for such instruction to the jury, and having failed to avail themselves of that right they are in no position to complain. (*People* v. *Weisberg,* 396 Ill. 412; *People* v. *Rave,* 364 Ill. 72; *People* v. *Gerdy,* 362 Ill. 130; *People* v. *Savant,* 301 Ill. 225; *Spies* v. *People,* 122 Ill. 1; *Dacey* v. *People,* 116 Ill. 555.) In the instant case, as in *People* v. *Gerdy,* 362 Ill. 130, where an exactly similar contention was made, all the evidence on the subject of the robbery was that it was committed by two men, one of whom was armed with a pistol, and there was no conflict on that issue. The only issue under the facts presented to the jury was whether the defendants were guilty of the crime the witnesses say was committed. Under the circumstances, no duty devolved upon the court to give a form of verdict covering the lesser offense.

Defendants also contend that the trial court abused its discretion in denying their motion for a severance. It is well settled that all motions and petitions in the nature of motions, and the court's ruling thereon, are not a part of the common-law record. To become such they must be incorporated in a bill of exceptions or stenographic report signed by the trial judge. (*People* v. *Pignatelli,* 405 Ill. 302; *People* v. *Hamilton,* 404 Ill. 259.) The motion for severance has not been preserved in the report of proceedings before us, thus giving us no basis for determining if the court's denial of the motion was an abuse of discretion. Inasmuch as neither defendant made a confession, written or oral, and because of the nature of their defense, we find nothing in the record of the trial, which acted to the prejudice of either defendant.

Counsel next argues that the court improperly admitted statements made by Edward as to the ownership of the gun, outside of Walter's presence. The record does not support such an argument, for all the witnesses testified that both Walter and Edward were present when the re-

marks were made about the gun. In addition, Edward's admission of ownership can hardly be said to be prejudicial to Walter, for it was Walter who told the police that it was Edward's gun. We find no merit to this contention.

It is also asserted that the court unduly restricted cross-examination of the People's witnesses and the direct examination of the defense witnesses. In cross-examining the identifying witnesses, defendants' counsel sought by his questioning to induce the witnesses to say that they had made identification only after the police had pointed defendants out. Inasmuch as all the witnesses had stated that they had made positive identification of the defendants, an objection to this line of questioning, which sought to put words into the mouths of the witnesses, was properly sustained. The other instance complained of occurred when the examination of a character witness for one of defendants was restricted to evidence relating to general reputation of the accused, rather than the witness's personal opinion of the accused's character. The testimony not as to general reputation was properly stricken. *People* v. *Gibson,* 385 Ill. 371; *People* v. *Willy,* 301 Ill. 307.

The last contention made is that the court erroneously permitted evidence of other crimes committed by defendants. It is said that the witness Mahacek, whose testimony was previously discussed, was allowed to state that she was at the police station where defendants were held because of a robbery that occurred at her mother's tavern. That the witness so testified is not supported by the record, her only statement which might be deemed as attributing another crime to defendants, and we think it does not, was her unresponsive answer that: "I was the victim of a holdup." Defendants insist that it was error to allow the officers to testify that they found cash, whiskey, cigars and cigarettes in the abandoned auto, because only the cash could have had any connection with the crime for which defendants were tried. Facts and circumstances attending

the arrest of an accused may be proved where they tend to connect him with the perpetration of the offense for which he is being tried. (*People* v. *Eckman,* 380 Ill. 413.) Likewise, evidence which tends to prove any fact material to the issue on trial is competent even though it proves defendant guilty of another crime. (*People* v. *Diekelmann,* 367 Ill. 372; *People* v. *Filas,* 369 Ill. 78.) In view of the alibi interposed by the defendants, and inasmuch as part of the articles found in the car are connected with the crime for which they were being tried, the evidence of the contents of the car was properly admitted even if it be construed as being evidence of other crimes committed by defendants.

The judgment of the criminal court of Cook County is affirmed.