People of the State of Illinois, Plaintiff-Appellee, v. James Paul Dwyer, Defendant-Appellant.

Gen. No. 64–46.

Third District.

April 6, 1965.

343

Harris & Harris, of Macomb, for appellant.

William L. Randolph, State's Attorney, of Macomb, for appellee.

CORYN, J.

This is an appeal by the defendant, James Paul Dwyer, from an order of the County Division of the Circuit Court of McDonough County, revoking defendant's probation.

The defendant was found guilty of operating a motor vehicle on a public highway while his operator's license was suspended, in violation of c 95½, § 6-303, of Ill Rev Stats 1963. On April 1, 1964, the defendant was granted probation for a period of three years upon the following terms: (1) that he would not violate any law of the State of Illinois nor any ordinances of any municipalities thereof, and would not leave the state without consent of the court; (2) that he would not go into, nor be found in, any tavern or any other place of business where intoxicating liquor, wine or beer is

sold, nor would he use any intoxicating liquor, wine or beer during the period of his probation; (3) that he would not operate a motor vehicle during the term of probation, and (4) that he would be steadily employed or in school during the term of probation. As a further condition of probation, the defendant was confined to the county jail for three days and was required to file a recognizance in the penal sum of $500, conditioned upon his faithful performance of the terms of probation.

On May 25, 1964, the Probation Officer filed a report with the court charging that the defendant had violated the terms of his probation by being involved with two other persons in the theft of a tire from a service station at Table Grove, Illinois, and by having in his possession twelve cans of beer. This report sought a rule against defendant to show cause why his probation should not be revoked.

On June 5, 1964, a hearing was held on the report of the Probation Officer, at which time the defendant appeared in person and was represented by counsel. At the conclusion of the hearing, the court entered an order finding that the defendant had violated the order granting probation "in that he committed the offense of theft, as alleged in the report of the Probation Officer, thereby violating paragraph 1 of said order granting said probation, and in that he did use beer, as alleged in said report of the Probation Officer, in violation of paragraph 3 of said order granting probation." The court further found "that defendant operated a motor vehicle in violation of paragraph 6 of said order granting probation, and that the defendant had neither been steadily employed nor in school, thereby violating paragraph 7 of said order granting probation."

■

The Probation Officer was then given leave to amend his report to conform with the evidence. The court then terminated the defendant's probation, and sentenced the defendant to 90 days at the Illinois State Penal Farm.

On July 8, 1964, the Probation Officer filed an amendment to his report by adding charges that the defendant had operated a motor vehicle during the term of his probation, and that the defendant was not steadily employed nor in school during the term of his probation. Defendant appeals from the order revoking probation.

The theory advanced by the defendant for reversal is that the evidence is wholly insufficient to sustain findings that defendant committed a theft, used beer, operated a motor vehicle, and was not steadily employed or in school. Defendant also argues that he was deprived of his right to a fair hearing because he was never given notice that he was being charged with operating a vehicle, and that he was being charged with not being steadily employed or in school.

■ Chapter 38, § 117–3(b), Ill Rev Stats 1963, provides that the State shall have the burden of proving a violation of probation. In People v. Price, 24 Ill App2d 364, at 379, 164 NE2d 528, it was held that the violation of probation must be proved by a preponderance of the evidence.

There is no evidence that the defendant used beer at any time during the period of his probation, and there is no evidence that beer was sold to defendant or that he was in any place where beer was sold. The sheriff testified that the defendant was sitting in the passenger side of the front seat of a parked automobile at the time he was apprehended, and that defendant's girl friend was sitting in the driver's side of the front seat of said automobile. A cooler with twelve cans of beer was in the car. There was no evidence

346

of empty beer cans in the car, that defendant had drunk any of the beer, purchased it, or that he knew of its presence in the car. An hour before defendant was apprehended, his brother and a friend had been using the car. The uncontradicted testimony of defendant's brother, Tim Dwyer, was, that he and one Bill Trumbull had put the beer in the cooler without the knowledge of the defendant. There was no other evidence in the record relating to the use of the beer.

The evidence is equally wanting on the issue of whether the defendant participated in the theft of the tire. On May 22, 1964, the defendant, his brother Tim, and Bill Trumbull were traveling through Table Grove, Illinois, where they stopped at a service station. Dennis Abernathy, the attendant at this station, testified that Tim Dwyer was driving when they arrived at his station. Tim Dwyer asked to buy a new tire, and Abernathy went to a storeroom, which is a separate building north of the service station, to get the tire. Abernathy brought the tire back and installed it on the rim of the wheel. The defendant and Bill Trumbull then took the wheel outside to mount it on the car while Abernathy went to the service station office to make out the new tire warranty. When defendant and Trumbull finished mounting the tire, Abernathy observed them get into the car and start the motor, and stated that they sat there in the car with the motor running until Tim Dwyer went out and got into the car, at which time they drove off. Abernathy was uncertain as to who was driving the automobile at this time. A short time thereafter, Abernathy was informed by Eugene Bean, who was not called as a witness, that a tire was missing. Abernathy called the sheriff, who later apprehended the defendant while he was sitting in the parked automobile. The sheriff requested that the trunk of the automobile be opened, whereupon the stolen tire was discovered.

347

The defendant testified that he did not take the tire or know of its presence in the automobile. Tim Dwyer testified that he stole the tire from the storeroom of the service station when the defendant and Abernathy were mounting a tire on the rim. Tim Dwyer further stated that the act of stealing this tire was an unplanned, spur of the moment decision. He stated that the trunk of the car was open and that he threw the tire into the trunk, closed the trunk, and walked back into the service station. He stated that his brother, the defendant, knew nothing about the theft of this tire. The record, in view of the uncontradicted testimony of Tim Dwyer, does not sustain a finding that the defendant participated in the theft of the tire or had knowledge of this theft.

██ Where the vital question in a proceeding for revocation of a defendant's probation is whether he violated the terms of probation by participating in a crime, nothing less than most convincing proof on the issue of whether the defendant participated in such a crime, will satisfy the requirements of justice. People v. Burrell, 334 Ill App 253, 79 NE2d 88.

██ ██ The evidence is even less convincing on the issue of whether defendant violated his probation by operating a vehicle and by failing to be employed or in school. Also the defendant was never advised in any manner prior to the hearing that he was being charged with these infractions. In People v. Price, 24 Ill App2d 364, at 376, 164 NE2d 528, the court stated:

"It has frequently been said that notice to a defendant and an opportunity to be heard are fundamental requirements and coexistent essentials of the constitutional guarantee of due process of law . . . a defendant in every case where probation has been granted is entitled to a conscientious judicial determination according to

348

accepted and well recognized procedural methods upon the question whether the conditions imposed upon the defendant when he was admitted to probation have been violated. Such a defendant is entitled to know the nature of the charge in advance of any hearing wherein he is alleged to have breached the order granting him probation and must be given an opportunity to answer any charge that has been preferred against him."

We are of the opinion that justice requires that the revocation order be reversed.

Reversed.

ALLOY, P. J. and STOUDER, J., concur.