THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYMOND KING, Defendant-Appellant.

(No. 72-88;

Third District—March 22, 1973.

Louis E. Olivero, of Peru, for appellant.

J. Randolph Comba, State's Attorney, of Princeton, for the People.

Mr. JUSTICE SCOTT delivered the opinion to the court:

The defendant Raymond King was on April 28, 1971, indicted for the crimes of burglary and theft. He subsequently entered a plea of guilty to the charges contained in the indictment. Thereafter he was granted probation for a period of 18 months, the first six months of which he was to be incarcerated in the Bureau County jail. The other conditions of the defendant's probation were the mandatory ones imposed by statute which included the prohibition that he should "not violate any laws of the State of Illinois or any ordinance of any city or village therein during said probation." However, during his term of probation the state's attorney of Bureau County filed a motion to revoke probation on the grounds that he had committed the crime of burglary. After hearing it was the determination of the trial court that the State had proven by a preponderance of the evidence that the defendant had violated probation by having committed such crime and an order was entered revoking probation and sentencing the defendant to a term of not less than 1 nor more than 3 years in the penitentiary. This appeal stems from this order of revocation and the sentencing of the defendant.

A number of issues have been presented for review and we first direct our attention to the question as to what quantum of proof is required by the State in a probation revocation proceeding where the probationer has been charged with the commission of a criminal offense.

■■ The defendant contends that the State must prove by the "most convincing" proof the allegations of the motion to revoke probation, and that such requisite establishes a greater standard than that required by the "preponderance of the evidence rule." To support his contention the defendant relies on the case of *People v. Dwyer*, 57 Ill.App.2d 343, 206 N.E.2d 113.

Our supreme court dealt with this precise question in the case of *People v. Crowell*, No. 44844, and concluded that the defendant's argument was without merit. In support of this conclusion the supreme court in *Crowell* stated:

> "Since this court has never before ruled on the precise question of what the quantum of proof should be in a probation revocation proceeding, and in the absence of statutory provision therefor (Ill. Rev. Stat. 1971, ch. 38, par. 117—1 et seq.), we hold that a violation of the conditions of probation must be proved by a preponderance of the evidence.
>
> We note, moreover, that the General Assembly has specifically

incorporated this standard in the new Illinois Code of Corrections (Ill. Rev. Stat. 1971, ch. 38, par. 1005—6—4(c); P. A. 77—2097), effective January 1, 1973."

This pronouncement of the supreme court is dispositive of this contention of the defendant and we therefore likewise hold it to be without merit.

The defendant raises a number of issues for review, one of which is that the evidence failed to establish any connection between the defendant and the crime charged.

The following facts were adduced at the hearing to revoke the defendant's probation. James Virgil Kasbeer testified that he was the owner of a restaurant known as Skip's Kasbar located in Hollowayville, Bureau County, on Route Number 6. Kasbeer and his family, consisting of his wife Enita, his son Michael, and his brother-in-law Lyle Curley, resided in the back portion of the restaurant building.

The record further discloses that on the evening of March 3, 1972, James and Enita Kasbeer closed the restaurant at approximately 10:00 o'clock P.M. and sometime thereafter they left the building for the purpose of visiting a Don Polly. The son Michael and Lyle Curley remained in the residence portion of the restaurant. Sometime between 12:00 to 12:30 o'clock A.M. Michael noticed from his bedroom window that someone was knocking at the back door. The knocking continued for 10 to 15 minutes, then stopped for approximately 5 minutes and the door was opened and a man walked into the building. Michael recognized this man, who was dressed in a plaid jacket, as Raymond Platt. A second man waited outside the door but Michael did not get a good look at him and could only describe him as being about five feet, eight inches in height, heavy, and that he wore a dark coat which was similar to a military jacket.

When Lyle Curley yelled the two intruders ran away and disappeared in the darkness. Momentarily after they disappeared a loud noise from a car was heard but when Michael, who attempted to pursue them, looked down the highway he failed to see anyone or any vehicle.

A deputy sheriff was notified of this burglary and he proceeded to Skip's Kasbar where he talked to Lyle Curley, Michael Kasbeer and James Kasbeer, who had returned to his place of business. The deputy then proceeded on Route 6 for approximately an eighth of a mile until he came to a gravel road which he turned on to and after traveling a short distance he saw car tracks in the snow and could tell from the tracks that an automobile had been backed into some bushes. The deputy also found footprints of two individuals which led in two different directions. A picture was taken of the tire tracks which indicated that they

were made by new tires and that the tires were of an unusual width, being 6½ inches wide. The investigating officer also discovered broken twigs in the area where the automobile had been parked.

At approximately 1:15 A.M. on March 4, 1972, an Officer Smoode of the Spring Valley Police Department saw the defendant as he was driving a red Dodge convertible in the city. Spring Valley is about 6 or 7 miles from Hollowayville. The officer stopped the defendant because he had only one tail light and his muffler was slightly loud. At this time Kevin Platt was sitting in the front seat with the defendant. The defendant at this time had long blond hair, was stockily built and was wearing a green corduroy jacket. The defendant fixed the faulty tail light and was permitted to go on his way. Prior to permitting the defendant to depart the officer had radioed the sheriff's office that he had stopped two subjects who fit the description of the men wanted in the Skip's Kasbar burglary, but when he received no response he authorized their departure. However, shortly thereafter Officer Smoode was requested by the sheriff's office to take the men into custody. The officer complied with this request and the defendant after again being stopped was taken to the Spring Valley City Hall and later to the Bureau County jail. Prior to being confined in jail the defendant denied any complicity in the Skip's Kasbar incident. His automobile was photographed and examined. The examination disclosed that the vehicle had no back window, that snow had entered through this opening into the vehicle and that two small sticks were on the back seat.

When the defendant was taken into custody a third party was also present in his vehicle, an individual called "Peanuts", who was determined by the police to be a hitchhiker and who was picked up by the defendant. The testimony of Officer Smoode was that he had seen the individual referred to as "Peanuts" hitchhiking between 1:00 A.M. and 1:15 A.M. on the morning of March 4, 1972. Having determined that this individual was in fact a hitchhiker he was released.

The defendant testified in his own behalf and stated that from 8:00 P.M. on the evening of March 3, 1972, until he was taken into custody he drove to La Salle where he visited with a police officer Lucas, then met a friend John Malik, that he made several other stops and finally went to the Tiki Restaurant at route 51 and interstate 80 where he met Kevin Platt at about 12:30 A.M. on March 4, 1972. From the Tiki Restaurant he testified that he drove to Peru, then to Spring Valley where they picked up the hitchhiker and that shortly thereafter he was taken into custody.

The record in this case discloses that the witnesses are at variance in regard to the exact time the various incidents we have set forth actually

occurred. In examining their testimony we can only conclude that they all took place in the late hours of March 3 and early hours of March 4, 1972.

■■ Directing our attention as to whether or not the defendant was proven to be connected with the crime of burglary which resulted in the revocation of his probation, we first recognize the rule that a finding that probation has been violated will not be disturbed merely because there is a conflict in the evidence. The trial judge who heard the evidence was in a better position to weigh the testimony of witnesses than is a reviewing court, and we will substitute our judgment for that of the trial court only when judgment is contrary to the manifest weight of the evidence and not where the evidence is merely conflicting. *People v. Guido,* 25 Ill.2d 204, 184 N.E.2d 854.

■■ A close examination of the evidence adduced in the instant case raises the serious question as to whether the state ever connected the defendant to the crime with which he was charged. We fail to find that the state made this proof by the "preponderance of the evidence" rule. There was never any direct and at the most only tenuous circumstantial evidence produced which served to link the defendant to the burglary of Skip's Kasbar. The testimony of Michael Kasbeer and Lyle Curley was that they could not identify the defendant as being one of the two men present who were participating in the burglary. Michael Kasbeer, who knew the defendant, saw the second unidentified individual on the night in question yet could not identify him then nor could he state while looking at the defendant in open court that he was a participant in the burglary. The unidentified participant was described as wearing a dark military type of jacket, yet when the defendant was taken into custody a short time after the burglary he was wearing a green corduroy jacket. Where the conviction of defendant rests on identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt it will be reversed. (*People v. Gardner,* 35 Ill.2d 564, 221 N.E.2d 232.) Even under the lesser standard of the "preponderance of the evidence" rule the identification of the defendant in the instant case is indeed doubtful, vague and uncertain.

The State attempted to prove the defendant's participation in the Skip's Kasbar burglary by circumstantial evidence. This was done when an effort was made to link the defendant to the crime by footprints and tire tracks found in the snow on a gravel road near Skip's Kasbar. There was a total failure to relate the footprints to the defendant and the only evidence as to the tire prints was that they were unusually wide and such as would be produced by tires that were on the defendant's automobile. However, a State witness, being a law enforcement officer, on

cross examination testified, "I have seen many Good Year or Firestone tires of this width in the area around Spring Valley and Princeton. Tires of this width are sold to the public at large." Not only was there a failure to make a connection of the scene of the crime with the gravel road where the tire prints were found, but in addition the tire prints were never matched with the tires on the defendant's automobile by any vulcanizing pattern, defect, cut or other irregularity. The only evidence was that the tires on the defendant's car and the prints found in the snow were approximately the same size. Such evidence is far too tenuous to permit a finding that the defendant's automobile was ever on the gravel road which is located near the scene of the crime.

■■ Two small twigs or sticks were found on the rear seat of the defendant's automobile. No tests whatsoever were conducted by the State in order to relate these twigs to trees and bushes located by the side of the gravel road. No evidence was produced as to specie or any other identifying features that would permit one to conclude that they might have come from the bushes adjacent to the road and certainly there was no evidence to the effect that they did come from such bushes. These items of physical evidence have no probative value. They totally fail to place the defendant at or near the scene of the crime. Physical evidence in a criminal proceedings is admissible provided there is evidence to connect the objects found with the defendant and with the crime. (*People v. Miller*, 40 Ill.2d 154, 238 N.E.2d 407.) The physical evidence in the instant case, being twigs found in the defendant's automobile, totally fails to serve this purpose.

■■■ The most damaging evidence to the defendant was that when arrested he was in the company of Kevin Platt, who was identified as one of the burglars of Skip's Kasbar. When arrested it was more than an hour after the crime and some six or seven miles from its scene. The defendant testified in his own behalf and gave detailed information as to activities, whereabouts and companions on the night of March 3, 1972, and up to the time he was apprehended in the early morning hours of March 4, 1972. The defendant testified that he met Kevin Platt at Tiki's Restaurant where they had some coffee. None of the defendant's testimony was impeached by the State. In *People v. Tomaszewski*, 406 Ill. 346, 94 N.E.2d 154, the reviewing court stated, "Facts and circumstances attending the arrest of an accused may be proved where they tend to connect him with the perpetration of the offense for which he is being tried." As we stated, it was damaging to the defendant that when arrested he was found in the company of Kevin Platt. However, in view of the defendant's unimpeached explanation and the failure to identify the defendant either by direct or circumstantial evidence as being a par-

ticipant in the burglary of Skip's Kasbar we conclude that the defendant's contention is well taken in that the evidence failed to establish any connection between him and the crime charged.

■■ There is also present in the instant case the question as to whether the evidence was sufficient to prove all the elements of the crime of burglary in that neither of the eyewitnesses, Michael Kasbeer and Lyle Curley, were able to place the unidentified individual within the Kasbeer building. Our courts have repeatedly stated that the gist of the offense of burglary is the entering of a building with felonious intent. (See *People v. Clark*, 30 Ill.2d 216, 195 N.E.2d 631; *People v. Palmer*, 26 Ill.2d 464, 187 N.E.2d 236. See also Chapter 38, Sec. 19—1, Illinois Revised Statutes.) However, in view of the fact that we have found that there is no evidence connecting the defendant with the crime charged it becomes unnecessary for us to make an analysis of the evidence in order to determine whether or not all the elements of the crime of burglary were present in the instant case as far as the unidentified individual was concerned.

For the reasons set forth the judgment of the circuit court of Bureau County revoking the probation of the defendant is reversed.

Reversed.

ALLOY, P. J., and STOUDER, J., concur.