THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RUSSELL OLIGER, Defendant-Appellant.

(No. 74-85; )

Second District (2nd Division)—October 27, 1975.

Ralph Ruebner and Phyllis J. Perko, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (James W. Jerz and Martin Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

Defendant appeals after a jury found him guilty of rape and robbery. He was sentenced to imprisonment for 4 to 12 years in the rape conviction and 1 to 3 years for robbery, the sentences to run concurrently.

Two police officers discovered the defendant having sexual intercourse with the prosecutrix in the outer lobby of a bank in Rockford at about 11:35 p.m. on November 21, 1972. The prosecutrix told the officers she was being raped, and warned them that defendant had said he had a gun. No weapon was found.

In a signed statement, defendant claimed that he had picked the woman up in a bar shortly before, that she had accompanied him to the bank willingly and had consented to his sexual advances.

Prosecutrix testified that she had been babysitting for a cousin until 11:15 or 11:30 that evening; that on leaving her cousin's home, she stopped to purchase groceries and then went to the bank to make a night deposit; that defendant there approached her, demanded her money and then forced her to have intercourse with him under threat that he would kill her if she did not do as he wanted.

Defendant did not testify at trial. The prosecutrix's account of her whereabouts was corroborated by her cousin and by grocery store personnel. A blood-alcohol test of a sample of her blood, drawn shortly after the incident, was negative. The bartender at the tavern where defendant assertedly picked up the prosecutrix denied that defendant had been there that evening after 10 p.m., when the bartender came on duty.

■■ Defendant now argues that the rape statute under which he was convicted (Ill. Rev. Stat. 1971, ch. 38, § 11—1), is unconstitutional as denying him, on the basis of sex, equal protection under the law. Such an argument was recently rejected by this court in *People v. Medrano,* 24 Ill.App.3d 429 (1974). Moreover, this issue was not raised in the trial court. The question of the constitutionality of a statute is properly presented for review only when it has been raised and passed on by the trial court. *People v. Hale,* 31 Ill.2d 200, 201-02 (1964); *People v. Luckey,* 42 Ill.2d 115, 117 (1969), *cert denied,* 397 U.S. 942, 25 L.Ed.2d 122, 90 S.Ct. 955 (1970); *People v. Amerman,* 50 Ill.2d 196, 197 (1971).

Defendant next argues that he was denied a fair trial by the introduction of evidence of other offenses. This argument stems from the fact that one of the police officers who investigated the incident testified that, on the night of the incident, he went to the tavern where defendant claimed to have picked up prosecutrix, and the State then elicited testimony that the officer had taken with him "some police indentification photographs of Mr. Oliger." Defense counsel objected and stated

in chambers that such testimony irreparably prejudiced defendant's trial because it amounted to a reference to defendant's past offenses for purposes other than impeachment. The trial court concluded that the evidence presented gave no indication that the photos were not merely snapshots taken on the night of the incident. The court stated that it would consider a motion for a mistrial if further evidence indicated an insufficient time interval between the arrest and the use of the photos for identification purposes. The State offered to stipulate that the photos were taken that night. We have closely examined the record in this case, and we agree with the trial court that the reference to the identification photographs, under the circumstances, did not carry with it an inference of prior offenses.

■■ Defendant cites cases for the proposition that the introduction of so-called "mug-shots" can be prejudicial in a criminal trial. We, however, find his citations inapplicable to the case at hand where the photographs were not shown to the jury. Mere mention of police photographs, without display of a dated legend which reveals a prior booking record, does not identify the picture with prior offenses. Moreover, such photographs, with the legends blocked out, have been properly introduced into evidence to show how a defendant could have been identified from photographs. (See *People v. Smith,* 20 Ill.App.3d 756, 760 (1974).) In the case at hand, the testimony surrounding these photographs was relevant to the impeachment of defendant's story of having been in a particular tavern on the night in question and there having picked up the prosecutrix. No error was committed by the mention of the photos.

· Defendant argues that certain remarks about defense counsel which were made by the prosecution in final argument were improper and so prejudicial as to deny defendant a fair trial. The prosecutor referred to defense counsel several times as a "clever lawyer," one whose every argument "has been designed with this cleverness." He also referred to defendant's version of the incident as "a concocted bull story," and said defense counsel had "in fact called prosecution's witnesses liars," when the defense had used no such term.

Defendant cites several cases to support his contention that the prosecutor's remarks regarding defense counsel constituted prejudicial error. We find his cases clearly distinguishable from the case at hand. In *People v. Freedman,* 4 Ill.2d 414 (1954), the court reversed where the prosecutor had made repeated references to the defense counsel as that "clever lawyer," but, the court pointed out, the case was close and the evidence highly conflicting on the issue of whether the defendant was intoxicated and thereby unable to form the specific intent required. The improper argument in that case suggested that defense counsel had

told defendant that he should say he was drunk. The instant case was not close, nor were the improper remarks related to any critical element in the defense.

In *People v. Stock*, 56 Ill.2d 461 (1974), the reviewing court reversed on the basis of many prejudicial errors in the argument of the prosecutor, errors including prosecutor's accusation that the defense counsel suborned perjury and referred to defendant's failure to take the stand. The latter comment itself would have constituted reversible error under *Griffin v. California*, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229 (1965). No such comments occurred here. Neither, in the instant case, does the remark about defendant's "concocted bull story" carry any necessary implication that the story was manufactured by defense counsel as was the situation in *Stock*, and as was the situation in the case of *People v. Polenik*, 407 Ill. 337 (1950).

In *Polenik*, the prosecutor stated, "Defense lawyers, who practice criminal law day in and day out, they are the ones that concoct these defenses * * *." (*People v. Polenik*, 407 Ill. 337, 348 (1950).) In the context of the evidence presented in the instant case, we believe that the reference to a "concocted bull story" referred to defendant's statement of what happened rather than to counsel's theory of the case, and consider the remark within the bounds of proper argument. (See *People v. Halteman*, 10 Ill.2d 74, 83-84 (1956).) The *Polenik* case is further distinguishable from the case at bar because of that prosecutor's glaringly improper argument to the jurymen that he would "take responsibility for the death penalty" if they had any feeling that they could not give it; the jury did impose the death penalty. No such glaring error is present here.

■■■ While comments about defense counsel are not proper argument and are not to be condoned by the court, the instances complained of by defendant were not reversible error. Reversible error occurs when it appears that the acts complained of influenced the jury to the substantial prejudice of the defendant. (*People v. Lopez*, 10 Ill.2d 237, 241 (1957), *cert. denied*, 353 U.S. 975, 1 L.Ed.2d 1138, 77 S.Ct. 1062 (1957).) In considering whether improper argument constitutes prejudicial error, the test is "whether the verdict of the jury would have been otherwise had the improper remarks not been made." (*People v. Campbell*, 13 Ill.App.3d 31, 33 (1973), citing *People v. Davis*, 46 Ill.2d 554, 560 (1970).) Where the weight of the evidence against the defendant is overwhelming, as it is in the case at hand, the complained of comments, suggesting tricky or unethical tactics, cannot be considered prejudicial. See *People v. Bracy*, 14 Ill.App.3d 495, 503 (1973); *People v.*

*Bravos*, 114 Ill.App.2d 298, 320 (1969), *cert. denied*, 397 U.S. 919, 25 L.Ed.2d 100, 90 S.Ct. 927 (1970).

This court has carefully reviewed the defendant's other allegations of error regarding the evidence against him and regarding prosecutor's characterization of defendant. Great latitude is allowed prosecution counsel in closing argument. (*People v. Johnson*, 66 Ill.App.2d 465, 471 (1966).) Arguments and statements based upon the facts in evidence or upon legitimate inferences drawn therefrom, do not transcend the bounds of legitimate argument. (*People v. Halteman*, 10 Ill.2d 74, 83 (1956).) Viewed in light of these standards, we find no merit in defendant's remaining arguments.

We therefore affirm the judgment below.

Judgment affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.