THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLARENCE HANNON (Impleaded), Defendant-Appellant.

First District (5th Division)    No. 79-1708

Opinion filed June 12, 1981.

Ralph Ruebner and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, James S. Veldman, and Edwin Bishop, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Clarence Hannon and Darrell Bellamy were convicted of burglary (Ill. Rev. Stat. 1977, ch. 38, par. 19—1). Defendant was sentenced to 10 years' imprisonment and Bellamy to 4 years. Defendant appeals. We affirm.

The issues presented for review are: (1) whether certain questions posed to witnesses by the prosecution during trial constituted reversible error; (2) whether a certified copy of a license plate application was improperly admitted into evidence; and (3) whether the trial court erred in not considering drug abuse treatment for defendant pursuant to the Dangerous Drug Abuse Act. Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq.*

The following evidence was adduced at trial. Chicago police officer Michael McCullough testified that at approximately 5:21 a.m. on July 18, 1978, he and his partner received a burglary in progress call over their squad car radio. In response they left their location at 83d Street and Western Avenue and proceeded north on Western Avenue. As they approached 82d Street, they observed a white vehicle with two male occupants turn south onto Western. Officer McCullough turned on the squad car's blue lights and spotlight and pursued the vehicle. The vehicle stopped and the driver, whom McCullough identified as defendant, exited but then jumped back into the car and drove away. Officer McCullough wrote down the license plate number of the car and identified those plates at trial.

A high-speed chase ensued. McCullough's partner transmitted a broadcast over the police radio to which several other police cars and a police squadrol responded. Eventually the chase, which at times approached speeds of up to 100 miles per hour, ended. The actual arrest was made by two other officers, Heins and Howard. McCullough testified that defendant Hannon was one of the two men he saw arrested. McCullough further testified that he saw property in the back seat of the automobile and inventoried the property at the Sixth District police station.

Officer Howard's testimony corroborated that of Officer McCullough. He identified defendant as the driver of the car whom he arrested. Officer Howard also observed miscellaneous tool boxes and power tools in the back seat of the car defendant was driving.

The testimony of McCullough and Howard was corroborated by that

of Officer Roberts, who also took part in the high-speed chase and subsequent arrest of defendant.

Burglary investigator Barski also testified on behalf of the State. He stated that he questioned defendant in the lockup. He testified that defendant had admitted to him that he broke in and took the property and placed it in the car. Bellamy, arrested along with him, admitted that he had been with defendant and that they had committed the burglary. On cross-examination Barski testified that no other officers were near defendant during this interview. No mention of these conversations was included in the police report prepared by Barski and identified by him at trial, but these conversations were reported in a "101" report prepared by Barski and his partner which was submitted to the State's Attorney. He testified that the purpose of the "101" report is to briefly state the facts involved for the State's Attorney. On redirect examination Barski stated that although he was testifying from memory, he had refreshed his recollection of these events prior to testifying by reviewing the "101" report and the reports of other police officers.

An occurrence witness also testified for the State. The witness stated that he was walking his dogs in his neighborhood at approximately 5:20 on the morning of July 18, 1978. When one of his dogs began barking, he walked to the alley and saw someone there three or four houses down from him. The person was on his hands and knees looking into a neighbor's garage through an opening created by a missing panel in the door. There was a cream-colored car in the alley near the garage. The witness called out and asked what was going on. The man approached the witness and told him to mind his own business. The witness turned, went into his house and called the police. While making the call the witness looked out his window and saw the man walk back toward the garage. He also saw a second man open the garage door and exit from the garage. The second man was carrying something but the witness could not identify it. The second man entered the cream-colored car from the passenger side and defendant entered from the driver's side. The witness testified that when calling the police he told them that the two men were leaving and were "heading toward 80 north." The garage door was open when they left. The witness identified defendant as the man he saw looking into the garage door that morning. At the conclusion of this testimony, the State over defense objection entered into evidence a certified copy of the application for the license plates found on the car used in the commission of the burglary.

The owner of the garage in question also testified that on the morning of July 18, 1978, he went to his garage and found the side door and overhead door open. There was a hole in one of the panels of the overhead door. Several items were missing from the garage. He identified

Peoples Exhibit No. 7, found in defendant's car when he was arrested, as a tackle box which he kept in his garage.

The State rested its case in chief. The defendants offered no evidence in their behalf and rested. The jury returned verdicts of guilty.

Subsequently a hearing in aggravation and mitigation was held in which it was pointed out that defendant had four prior felony convictions involving theft or burglary. Defendant's presentencing report indicated he had admitted using drugs for 12 years. Defendant's counsel did not request the court to consider drug abuse treatment for defendant, although he made such a request on behalf of Bellamy. The court sentenced defendant to 10 years' imprisonment and Bellamy to 4 years. Defendant appeals.

OPINION

Defendant first objects that certain questions posed to witnesses by the prosecutor during trial constituted reversible error. Specifically, defendant objects to: (1) questions regarding a police radio broadcast which were beyond the scope permitted by the trial court's protective order; (2) questions posed to police witnesses as to the whereabouts at the time of trial of other arresting officers; (3) questions posed to the burglary investigator on the case which implied the various police reports, the felony review folder and a discussion with the investigator's partner would support the investigator's testimony. Defendant also objects that the introduction into evidence of a certified copy of a license plate application constituted evidence of another crime, the misdemeanor of switching license plates (Ill. Rev. Stat. 1977, ch. 95½, par. 3—703), and hence was improper.

■■ We consider these issues to be waived. Both defendant in his own behalf and his counsel, who had represented him throughout the trial, filed written post-trial motions for a new trial. None of these allegedly prejudicial errors was raised in either post-trial motion. The general rule is that the failure by the defendant to raise an issue in a written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) In criminal cases errors not properly preserved may be considered in those cases where the evidence is closely balanced. (*People v. Bradley* (1964), 30 Ill. 2d 597, 198 N.E.2d 809; *People v. Jackson* (1980), 89 Ill. App. 3d 461, 411 N.E.2d 893.) However, we do not consider, nor has defendant asserted that the evidence in this case is closely balanced. Therefore, departure from the general rule is not warranted and we decline to consider these issues on appeal.

Defendant finally argues that the trial court erred by failing to consider drug abuse treatment pursuant to the Dangerous Drug Abuse

Act (Ill. Rev. Stat. 1977, ch. 91½, par. 120.1 *et seq.*) as an alternative to sentencing. Section 10 of that act provides in pertinent part:

> "If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible to make the election provided for under Section 8 [Chapter 91½, §120.8], the court *may* advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by the Department." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 91½, par. 120.10.

Defendant asserts that where, as in the instant case, the presentence materials support drug abuse treatment the record must affirmatively show that placement under the Dangerous Drug Abuse Act was considered by the court. Defendant contends that because in the instant case the record is void of any reference by the court to drug abuse treatment for him, the court did not consider treatment as an alternative to sentencing. Therefore, defendant argues the case must be remanded.

We disagree believing *People v. Kuesis* (1980), 83 Ill. 2d 402, 415 N.E.2d 323, dispositive of this issue. There, as in the instant case, the presentence report indicated that the defendant had a drug problem. The court sentenced defendant to imprisonment without considering probation under the Act. On appeal, defendant argued that the court erred because it was obligated to exercise its discretion in considering such an alternative, when it had reason to believe that a convicted defendant was an addict. The supreme court rejected this argument stating that the court need not exercise its discretion unless defendant first applies for probation under the Act by filing a petition. 83 Ill. 2d 402, 406.

■■ In the instant case defendant neither filed such a petition for treatment under the Act nor orally requested the court to consider such an alternative. (See *People v. Andrews* (1981), 95 Ill. App. 3d 595, 420 N.E.2d 509.) Accordingly, the trial court in the instant case was not required to initiate an inquiry into defendant's eligibility to receive drug treatment under the Act.

We are aware of the amendment to section 10 of the Dangerous Drug Abuse Act (Pub. Act 81-851, effective September 20, 1979), which provides in pertinent part:

> "If a court has reason to believe that an individual convicted of a crime is an addict or the individual states that he is an addict and the court finds that he is eligible to make the election provided for under Section 8 [Chapter 91½, §120.8], the court *shall* advise him that he may be placed on probation if he elects to submit to treatment and is accepted for treatment by the Department." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 91½, par. 120.10.)

However, as the commission of the crime and defendant's indictment and

363

sentencing occurred prior to the effective date of the amendment, it is inapplicable in this case. See *People v. Kuesis* (1980), 83 Ill. 2d 402, 415 N.E.2d 323.

For the reasons cited herein, the judgment of the circuit court is affirmed.

Judgment affirmed.

SULLIVAN, P. J., and WILSON, J., concur.