THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
THOMAS BLACK, Defendant-Appellant.

Second District    No. 80-1002

Opinion filed July 8, 1982.

Mary Robinson and Kyle Wesendorf, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

The defendant, Thomas Black, was convicted in a jury trial of rape, burglary and armed violence. He was sentenced to nine years for rape, six years for armed violence and three years for burglary to be served concurrently. Defendant contends on appeal that the prosecutor's references to him as a "peeping tom" during closing argument were unsupported by the evidence and thus denied him a fair trial.

On February 1, 1980, the victim, a young woman, returned to her

apartment about 1 a.m. As she entered her bedroom a man grabbed her from behind. He put his hand over her mouth, and she saw a knife. The man tied a cloth over her eyes and her mouth. He then tied her hands and her feet to her bedposts with nylon stockings, cut off her underwear and raped her.

The man remained in her apartment until 2:30 a.m. He talked to her almost constantly. His voice sounded like he was white and in his mid-twenties. Because she had been blindfolded, the victim did not see the man's face. However, she heard the sound of Velcro closures on his clothing and the sound of blue jeans being removed when he took down his pants.

Three days later, about 11 p.m., the defendant Black was arrested while walking through the apartment complex where the victim lived. The police were looking for a white male in his twenties, 5' 9" to 6' tall, of medium build, unshaven, wearing blue jeans and clothing with Velcro closures. Defendant was wearing blue jeans, a ski jacket and ski mask. He said he was taking a walk; that he had no identification and that his name was Tom Collins. His footprints in the snow were similar to those found outside the victim's bedroom window on the night of the rape. A red and white bandanna and an electrical cord were found in the defendant's pockets. His coat had Velcro closures. Two days later the victim identified Black's voice as that of her attacker. At trial, police officer Jerry Awe testified regarding the rapist's footprints found outside the victim's window on the night she was attacked. He followed the prints past other neighboring apartment buildings. He testified that the rapist had apparently stopped or at least "turned around" in front of various buildings and sliding glass doors. The officer used a chart at trial to illustrate the path of the prints with red pencil, using "red circles" or "blue blurs" to indicate stops or "turn arounds."

Police officer Ronald Neumann testified regarding defendant's footprints discovered the night the defendant was arrested. Using the same chart used by Officer Awe, Officer Neumann marked the defendant's path with a blue pencil. Basically the path was the same as that of the rapist on February 1, 1980, although defendant had deviated to come within 8 to 10 feet of an uncurtained bedroom window in a neighboring apartment building. In addition, Officer Neumann testified that he knocked on that window and asked a young lady who responded if she had seen anyone outside earlier. At trial, Maggy Ransbottom, age 25, testified that she lived in that apartment at that time with her sister and that there was no curtain on the bedroom window. At trial, the victim testified to the events of February 1, 1980, and again identified the voice of the defendant, Thomas Black, as that of her attacker after he repeated several statements made to her by the rapist out of the presence of the

jury. Following the denial of defense motion for a directed verdict and the jury instructions conference, closing arguments were made. During those arguments, the prosecutor made reference to a "peeping tom" on five occasions, and there was no objection to any of the references except to the following:

> "The path indicates that he had come from here. This is where the car was found, in the parking lot at the Touch of Spain Apartments, these three, walked across here, and he looked in apartment 101, the same window that had been looked in five nights before. That's why we put on Maggy Ransbottom, one of the women who lived there, to give you an idea of who he was looking at, another attractive young woman; a peeping tom. We know that Thomas Black was doing that."

Objection was made to this argument as "not a reasonable inference." No specific mention was made of the "peeping tom" phrase. The trial court overruled the objection. The matter was not raised in the post-trial motion.

■■ Section 116—1 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 116—1) provides that the motion for a new trial shall be in writing and shall specify the grounds therefor. The general rule is that the failure by a defendant to raise an issue in the written motion constitutes a waiver and the issue cannot be urged as a ground for reversal on review. (*People v. Precup* (1978), 73 Ill. 2d 7, 16; *People v. Roberts* (1979), 75 Ill. 2d 1; *People v. Edwards* (1978), 74 Ill. 2d 1; *People v. Tannenbaum* (1980), 82 Ill. 2d 177.) This waiver rule applies to constitutional as well as other issues. *People v. Pickett* (1973), 54 Ill. 2d 280.

■■ Supreme Court Rule 615(a), however, provides an exception to this rule of waiver where there has been "plain error." The rule reads in part:

> "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (73 Ill. 2d R. 615(a).)

The doctrine of plain error may be invoked in criminal cases where the evidence is closely balanced or where the error is of such magnitude that the accused is denied a fair trial. (*People v. Jackson* (1981), 84 Ill. 2d 350.) As the supreme court emphasized in *People v. Precup* (1978), 73 Ill. 2d 7, 16, in the context of Rule 615, plain error, its exceptions to the waiver rule do not operate in the nature of a general saving clause preserving for review all errors affecting substantial rights whether or not they have been brought to the attention of the trial court. Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed. (73 Ill. 2d 7.) This court has held that in considering whether improper argument constitutes prejudicial error, the test is

whether the verdict of the jury would have been otherwise had the improper remarks not been made. *People v. Oliger* (1975), 32 Ill. App. 3d 889.

■■ We believe that error has been committed by the failure of the trial court to sustain the objection to the "peeping tom" reference, but we do not believe this error is reversible error here. The evidence was not closely balanced, and the error was not of such magnitude as to deny the defendant a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245.

In view of the evidence in this case, we feel that the prosecutor's remarks were not prejudicial. Therefore, the decision of the circuit court of Lake County is affirmed.

Judgment affirmed.

LINDBERG and REINHARD, JJ., concur.