THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL PITTMAN, Defendant-Appellant.

First District (4th Division)  No. 82—1129

Opinion filed June 28, 1984.—Rehearing denied August 28, 1984.

588

James J. Doherty, Public Defender, of Chicago (Fred S. Flores, Karen A. Popek, and Elliot R. Zinger, Assistant Public Defenders, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Bruce A. Cardello, and Denise O'Malley, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a jury trial, defendant, Michael Pittman, was found guilty of two counts of armed robbery and sentenced to serve two concurrent 50-year terms.

He now appeals, contending that (1) other-crimes evidence was improperly admitted at trial; (2) the trial court improperly denied his motions to quash arrest and suppress evidence; (3) as to one count, an essential element of the crime of armed robbery was not proved; (4) the State was guilty of prosecutorial misconduct in closing argument; and (5) the trial court erred in imposing disproportionate sentences.

We affirm the convictions and sentences.

On October 20, 1981, Brenda Jackson and Roy Michel were working as salespeople at the J & S Food Store. Jackson testified that a man, whom she subsequently identified as defendant, Michael Pittman, entered the store at approximately 7:30 p.m. and purchased some candy. After Jackson, who was working the cash register, gave the man change, he pulled a gun and, holding it on Jackson and Michel, who were standing side by side behind the register, demanded the rest of the money. Jackson gave him the money from the register. After taking the remaining coins and food stamps, the robber forced Jackson and Michel at gunpoint into the back of the store and handcuffed them to a barred window. He then returned to the cash register and continued to look for more money. Finding Jackson's purse, he took $25 from it and exited the store.

Five days after the incident, Jackson and Michel were séparately shown six photos from which each identified defendant as the man who had robbed the J & S Food Store.

State trooper Delores Enright testified for the State that on November 21, 1981, she was on patrol on Interstate 94 when she saw defendant walking down the highway. She pulled her patrol car up alongside defendant and asked him for identification. Defendant gave her two traffic citations and told her he had run out of gas.

Officer Enright called in the citations on the patrol car radio, and a computer check revealed that there were no outstanding warrants out on defendant. Upon completion of the check, Officer Enright told defendant she would give him a ride to a gas station but that she would have to pat him down before allowing him to enter the patrol car. As she patted down defendant, Officer Enright felt a hard object beneath his coat. She reached under his coat and removed a fully loaded .357 magnum revolver. She placed defendant under arrest and drove him to the police station. When she subsequently ran defendant's name through the National Crime Information Center, she learned that he was wanted on five charges, including armed robbery.

A lineup was held, and Jackson and Michel separately identified Pittman as the man who had robbed the store. Jackson and Michel also observed a handgun lineup and identified the gun that was used by defendant during the robbery.

Carolyn Grandberry, defendant's girlfriend, and Annette Barnes testified for the defense that they were present with defendant at a baby shower from approximately 5 p.m. to 9 p.m. the evening on which the robbery took place. Both testified that defendant did not leave the party at any time prior to 9 p.m., when he departed with Grandberry and the couple's little girl.

At the close of the trial, defendant moved for a directed verdict. The court denied the motion and, upon deliberation, the jury found defendant guilty of two counts of armed robbery. Ill. Rev. Stat. 1979, ch. 38, par. 18—2.

Defendant now appeals those convictions.

■ Defendant's first contention is that other-crimes evidence was improperly introduced at trial. He specifically objects to (1) Officer Enright's testimony that he was wanted already on five charges, (2) the photo array submitted to the jury with the name of the Harvey Police Department printed on the front, and (3) the jury instruction that defendant was also being tried for unlawful use of weapons. We shall consider each of these claims of error in turn.

At trial, Officer Enright testified that when she ran defendant's vital statistics through the National Crime Information Center she learned that he was wanted on five charges, including armed robbery. Defendant correctly asserts the general rule in Illinois that evidence

of other crimes is inadmissible if relevant merely to show an accused's propensity to commit crime. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.) The State maintains that defendant waived this issue for purposes of review by failing to object at trial or raise it in a post-trial motion, and, alternatively, that other-crimes evidence is admissible for the purpose of offering a continuous narrative of the arrest. *People v. Alexander* (1966), 69 Ill. App. 2d 27, 216 N.E.2d 180.

While failure to object at trial or raise an alleged error in a post-trial motion generally operates as a waiver on appeal, where, as here, the error threatens to deny defendant a fair trial, a reviewing court may consider the heretofore unobjected-to matter. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) We therefore consider the State's alternative argument, namely, that the other-crimes evidence was admissible as part of a continuous narrative of the arrest.

The State posits that the officer's testimony was admissible as an explanation of how defendant, who was arrested for carrying an unlawful weapon, happened to be on trial for armed robbery, and that the evidence therefore tended to connect defendant with the crime for which he was being tried. (*People v. King* (1973), 10 Ill. App. 3d 847, 294 N.E.2d 300.) While this exception to the prohibition of the admission of other-crimes evidence might justify Officer Enright's disclosure that defendant was wanted for armed robbery, it fails to justify the gratuitous and overbroad disclosure that defendant was wanted for five other charges. Because such evidence had little probative value on the issue of defendant's guilt and was highly prejudicial, we find that the admission thereof was error. *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238.

■ The erroneous introduction of evidence of other bad acts or crimes by the accused does not, however, constitute *per se* grounds for reversal where the evidence as a whole shows that the accused is guilty beyond a reasonable doubt. (*People v. Nicholson* (1978), 61 Ill. App. 3d 621, 377 N.E.2d 1063.) Here, the evidence adduced at trial, which included two eyewitnesses' identification of defendant from both a photo array and from a lineup out of court as well as the in-court identification of defendant at trial, proved defendant guilty beyond a reasonable doubt. We therefore find that the error committed by the admission of Officer Enright's testimony was harmless.

■ Defendant next claims that the admission into evidence of a photo array bearing the caption "Harvey Police Department" and certain of his vital statistics was similarly improper under the prohibition against other-crimes evidence. The State maintains that the photos were admissible as probative of identity and of the means by which

defendant was first identified by the victims. The applicable law supports the State's argument.

The admission of "mug shots" has been held proper where, as here, they are admitted as the photos from which defendant was originally identified by eyewitnesses rather than to show arrest for another offense. (*People v. Maffioli* (1950), 406 Ill. 315, 94 N.E.2d 191.) Moreover, the admission of a "mug shot" is not reversible error where evidence of guilt is abundant, and it cannot be said that exclusion of the legends would have produced a different result. (*People v. Warmack* (1980), 83 Ill. 2d 112, 413 N.E.2d 1254.) We find that the photo array in the instant case was properly before the jury.

■ As his final claim of error under the doctrine of other-crimes evidence, defendant asserts he was denied a fair trial when the trial judge mistakenly informed the jury that defendant was charged with the offense of unlawful use of weapons in addition to that of armed robbery. The charge of unlawful use of weapons was not a charge on which the jury was to determine defendant's innocence or guilt. The State maintains that, under the general rule of waiver, defendant waived the issue on review by his failure to either object at trial or raise the alleged error in a post-trial motion. (*People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) Defendant concedes his failure to object but claims that the erroneous instruction rises to the level of plain error affecting his substantial rights. (73 Ill. 2d R. 615(a).) Our preliminary determination, then, is whether the unpreserved error may be considered under the plain error doctrine.

Review under the plain error doctrine is permissive and not mandatory. (*People v. Cross* (1981), 96 Ill. App. 3d 268, 421 N.E.2d 262.) The plain error doctrine is a limited exception to be used to correct grave errors or to be applied where the case is factually close and fundamental fairness requires that the jury be properly instructed. (*People v. Brophy* (1981), 96 Ill. App. 3d 936, 422 N.E. 2d 158.) In examining whether to apply the plain error exception to the waiver rule, the court must ask if defendant was prejudiced to the extent that he was prevented from receiving a fair trial. (*People v. Baynes* (1981), 88 Ill. 2d 225, 430 N.E.2d 1070.) It must be plainly apparent from the record that an alleged error affecting substantial rights was committed before the unpreserved error may be considered on review. *People v. Black* (1982), 107 Ill. App. 3d 591, 437 N.E.2d 1282.

In addition to these general considerations, two other factors must enter into our determination in the specific context of the instant case. First, in criminal cases, errors not properly preserved may be considered under the plain error doctrine in those cases where the

evidence is closely balanced. (*People v. Hannon* (1981), 97 Ill. App. 3d 358, 422 N.E.2d 1023.) Second, when determining whether plain error was committed in instructing a jury, the instructions must be examined as a whole to determine whether their cumulative impact cures or lessens the prejudice caused by the alleged error. (*People v. Currie* (1980), 84 Ill. App. 3d 1056, 405 N.E.2d 1142.) Thus, an erroneous jury instruction may deprive a defendant of a fair trial if it is given in a factually close case and goes to a fundamental matter such as the burden of proof or the elements of the crime charged. However, where, as here, the erroneous instruction was (1) oral only, (2) cured by proper written instructions, and (3) essentially duplicative of one of the elements of the crime charged, the error does not rise to the level of plain error such as to warrant this court's modification of the waiver rule. We therefore find no merit in defendant's claims of error based on the alleged admission of other-crimes evidence.

■ We next consider defendant's contention that the trial court's denial of his motion to quash arrest and suppress evidence was error because Officer Enright's pat down of defendant and the subsequent search and seizure were illegal. The State maintains that, under the circumstances, it was proper for the officer to conduct the pat down, which furnished probable cause for the search, which in turn yielded probable cause for the arrest. The specific circumstance that the State claims provided adequate cause for the pat down was Officer Enright's observance of a "bulge" under defendant's jacket. We find merit in the State's position.

A reviewing court will not disturb a trial court's finding on a motion to suppress unless that finding is found to be manifestly erroneous. (*People v. Reynolds* (1983), 94 Ill. 2d 160, 445 N.E.2d 766.) Nor will a court of review substitute its judgment for that of the trier of fact as to the credibility of the witnesses and the weight to be given their testimony. *People v. Cages* (1980), 82 Ill. App. 3d 900, 403 N.E.2d 565.

Officer Enright testified at trial that she noticed a bulge under defendant's jacket when he turned slightly in front of the illumination provided by the headlights of the patrol car. Defendant protests that the testimony was incredible because neither the officer's report nor her grand jury testimony made reference to a bulge. The trial court noted that the matter was essentially one of credibility of the witnesses, and, as the State points out, the trial court found Officer Enright's testimony that she saw a bulge to be credible. The trial court's finding as to the credibility of the testimony is not clearly erroneous. Accordingly, we will not disturb it on review. ˌ

Having accepted the fact that Officer Enright noticed a bulge in defendant's jacket, we note that her pat down of defendant was reasonable, based on the specific inferences that, in light of her experience, she was entitled to draw from the facts. (*Terry v. Ohio* (1967), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) A reasonably prudent person would have been warranted in believing that defendant might be armed and thus might pose a threat to the officer's safety, especially when the officer was about to let defendant enter her vehicle. (*People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252.) Moreover, the scope of the search in the instant case was strictly circumscribed to that which was necessary for the discovery of weapons. (*Terry v. Ohio* (1967), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868.) We therefore find that the pat down of defendant was proper protective conduct based on the officer's reasonable concern for her own safety. We also find that the discovery of the hard object concealed beneath defendant's jacket constituted probable cause for the search and ultimate seizure of the gun, which in turn justified defendant's arrest.

■ Defendant's next claim is that his conviction for the armed robbery of Roy Michel should be reversed because the State failed to prove that any property was taken from Michel's "person or presence," as required by statute. (Ill. Rev. Stat. 1981, ch. 38, pars. 18—1, 18—2.) Defendant bases this claim of error on the fact that Michel was standing beside Jackson, who was closer to the robber and who actually handed him the money from the cash register. The State refutes this contention, asserting that the essential elements of the armed robbery statute are satisfied by the taking of property from one's presence, and that Michel was present during the robbery. The well-established law in Illinois supports the State's position.

The Illinois Supreme Court has interpreted this specific statutory requirement, namely, that there be a taking "from the person or presence" of another, as not being limited to removal of the property from the victim's person or from the immediate presence of the owner, possessor or custodian. (*People v. Smith* (1980), 78 Ill. 2d 298, 399 N.E.2d 1289.) In support of this interpretation, the *Smith* court cited the case *People v. Braverman* (1930), 340 Ill. 525, 173 N.E. 55, in which the victims were locked in a back room of a store while the store was robbed. The court in *Braverman* found that the requirement of a taking from the "person or presence" was met when the property was in the possession or control of the victim, and the robber used violence or fear of violence as the means to take it. 340 Ill. 525, 531.

Here, as in *Braverman*, the property was taken from the pres-

ence of Roy Michel, who was standing next to the register. Michel shared cashier responsibility with Jackson and had access to and control of the register, despite the fact that he did not actually hand the money to the robber. The robber used force or threat of force to cause the victims to part with possession of the store's property against their will. The elements of armed robbery were therefore present.

Additionally, the "taking" in the instant case was not, as defendant argues, an instance where more than one offense is carved from the same physical act such as to subject defendant to only one armed robbery conviction. (*People v. Palmer* (1982), 111 Ill. App. 3d 800, 444 N.E.2d 678.) Here, there were two separate takings, once of the money and food stamps from the cash register, and one of the cash from Jackson's purse after defendant had handcuffed the victims to the barred window. Because there were two separate takings in the presence of two victims, the defendant is subject to two convictions for armed robbery. *People v. Moore* (1978), 61 Ill. App. 3d 694, 378 N.E.2d 516.

■ Defendant next claims that he is entitled to a new trial due to the State's improper comments during closing arguments. The State maintains that any such remarks that were not objected to at trial nor raised in defendant's post-trial motion were waived on appeal. Alternatively, the State argues that the remarks were proper and that, even if held to be improper, such remarks could not have played a material role in defendant's convictions in light of the overwhelming evidence of guilt presented by the State at trial.

After reviewing the record, we are unable to say that any of the allegedly improper remarks were so prejudicial or so flagrant as to deny defendant a fair trial. The trial court is in a better position than a reviewing court to determine the prejudicial effect, if any, of a remark made during argument, and unless clearly an abuse of discretion, its ruling should be upheld. (*People v. Smothers* (1973), 55 Ill. 2d 172, 302 N.E.2d 324.) Considering the record as a whole and the arguments in their entirety, we cannot find that the remarks could have been a material factor in defendant's conviction or that the verdict would have been different had the State refrained from making these remarks. (*People v. Boyd* (1980), 88 Ill. App. 3d 825, 410 N.E.2d 931.) We therefore find any closing argument fodder not to be fertile ground for a new trial.

■ Defendant finally contends that the trial court abused its discretion in imposing a disproportionate sentence and in improperly considering the threat of serious physical harm as an aggravating fac-

tor in its sentencing determination. We find no merit in either of these assertions.

After the trial court carefully considered appropriate factors in mitigation and aggravation of the offense, defendant was sentenced to two 50-year concurrent sentences. The trial court noted that defendant, with his history of prior convictions, fell squarely into the statutory provision for the imposition of an extended-term sentence. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) The sentence imposed and the basis for its imposition are proper under the extended-term statutes. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—8—2(a)(2), 1005—5—3.2(a), (b).) Moreover, it was proper for the sentencing court to consider that the defendant's conduct threatened serious physical harm to the victims as an aggravating factor in sentencing defendant on convictions of armed robbery. (*People v. Tolliver* (1981), 98 Ill. App. 3d 116, 424 N.E.2d 44.) It is permissible for a sentencing judge to consider the nature and circumstances of the offense, as well as the degree of each element of the offense. 98 Ill. App. 3d 116, 424 N.E.2d 44.

For the reasons stated above, we affirm the decision of the trial court.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.