THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CLIFFORD JONES, Defendant-Appellee.

Second District   No. 2—88—0345

Opinion filed April 13, 1989.

Fred L. Foreman, State's Attorney, of Waukegan (William L. Browers, Robert J. Biderman, and Dale M. Wood, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Cynthia M. Alexander, of Law Offices of Cynthia M. Alexander, of Waukegan, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Clifford Jones, was charged by indictment with unlawful possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)) and unlawful possession with intent to deliver a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1401(b)(2)). Prior to trial, defendant filed a motion to quash the arrest and suppress evidence. The circuit court of Lake County granted the motion. The State appeals. We affirm.

Six witnesses testified at the suppression hearing. Detective Curtis Brahme, an agent for the Metropolitan Enforcement Group (MEG), was the first witness. Detective Brahme testified that the MEG office was informed of narcotics traffic in North Chicago. On November 17, 1987, at 8 p.m., Brahme and another officer set up surveillance on the 1800 block of Greenfield Street in North Chicago. Brahme stated that a brown Delta 88 Oldsmobile was parked on the street. The officers watched the car for two hours. During this time, approximately 20 individuals approached the car and appeared to make transactions with the individuals inside the car. Brahme indicated that he could not identify any of the persons inside the car due

to the lighting conditions.

Around 10:10 p.m., the officers halted the surveillance and decided to obtain assistance from the North Chicago police department. Around 10:30 p.m., the officers, along with two additional officers, returned to the 1800 block of Greenfield Street. At this time, the officers approached the vehicle. Brahme testified that all persons in the area were stopped and searched for weapons. Brahme stated that defendant left the vehicle and was stopped and searched. A search of defendant revealed several small packets of cocaine. Defendant was then placed under arrest.

Defendant also testified at the suppression hearing. Defendant stated that he played basketball in a park district league until 10 p.m. He was given a ride to the 1800 block of Greenfield after the game had ended. After being dropped off, defendant was stopped by the police and searched. Defendant stated that at no time was he in the brown Oldsmobile.

Defendant presented three alibi witnesses at the hearing. Dennis Ritz testified that he was the official scorer for the basketball league. Ritz stated that the scorebook indicated that defendant had participated in a park district game on the night in question. It was Ritz' opinion that the basketball game ended sometime between 9:30 and 10 p.m.

John Washington and Excell Robinson both testified that they left the basketball game around 10 p.m. in a borrowed brown Delta 88 Oldsmobile. Two other passengers were in the car. However, defendant was not one of the passengers. Both witnesses stated that the police surrounded the vehicle after it entered the 1800 block of Greenfield Street. Both witnesses got out of the car, were told to lie on the ground, and were subsequently searched.

Following arguments of counsel, the trial court granted defendant's motion to suppress the evidence. The court stated:

> "[T]he problem I have here is we have a vehicle with no identification by way of who is in the car at the time. There's no identification by way of license plate number or anything else or anything particularly unusual about the vehicle that would distinguish it from others, other than the make and color. Then we have testimony of course that I think is entirely credible that the defendant was engaged in a basketball game during the time that the officer was watching.
>
> ***
>
> But the problem I have is exactly what defense counsel alluded to, we have that gap and when he [Detective Brahme] re-

turned, he doesn't see any illegal transactions going on and there's no way to know, in fact, because there's no identification of the license plate or the car or the people if in fact it is the same people that were there before. That part was never established. Because of the gap.

Unlike the case of a house that doesn't move or the car that's being followed and the defendant's presence is really part of the surveillance, I think it's been established by the evidence that he wasn't there.

\*\*\*

What the officer did was reasonable. The problem is maybe the chain, but you can't say chain like a chain of custody, but there is a kind of a chain of events that was broken and with that, they lost the identification.

The Court grants the motion."

The State filed a certificate of impairment and a timely notice of appeal.

■■ ■ On appeal, the State contends that the trial court's order granting defendant's motion to suppress was manifestly erroneous. The State correctly points out that a trial court's ruling on a motion to suppress will not be overturned unless it is manifestly erroneous. (*People v. Stout* (1985), 106 Ill. 2d 77, 88; *People v. Hoddenbach* (1988), 169 Ill. App. 3d 499, 506.) The State argues that the stop, and subsequent search of defendant, were justified under the rule announced in *Terry v. Ohio* (1968), 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868. In *Terry*, the court held that a police officer may briefly stop an individual to investigate possible criminal activity, even though the officer has no probable cause to make an arrest. (392 U.S. at 22, 20 L. Ed. 2d at 906-07, 88 S. Ct. at 1880.) The holding in *Terry* has been codified in section 107—14 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 107—14). In addition, *Terry* also allows an officer to conduct a limited search for weapons if the officer reasonably believes that the individual is armed. 392 U.S. at 24, 20 L. Ed. 2d at 908, 88 S. Ct. at 1881.

■ We believe that the situation in the present case is distinguishable from the situation in *Terry*. Here, by Detective Brahme's own admission, defendant was neither committing a crime nor was he about to commit one at the time of the stop and search. Detective Brahme stated, "I didn't see him [defendant] violate any law." Defendant was merely in the vicinity of the suspicious vehicle when the officers returned to the 1800 block of Greenfield. At no time did Detective Brahme question defendant. Instead, defendant was or-

dered to lie down and submit to a search. At no time did defendant attempt to escape. At no time did defendant refuse to cooperate with the police.

The State contends that the decisions in *People v. Pittman* (1984), 126 Ill. App. 3d 586, and *People v. Solis* (1985), 135 Ill. App. 3d 991, support its position that the officers had a reasonable suspicion to stop and search defendant. We disagree. In *Pittman*, the officer noticed a bulge in the defendant's coat jacket pocket. The appellate court held that the police officer properly patted down the defendant based on the officer's reasonable concern for her own safety. (*Pittman*, 126 Ill. App. 3d at 593.) In *Solis*, a witness called the police after seeing the defendant leave a neighbor's house with a television set. The witness also observed the license plate number of the defendant's automobile. The police stopped the defendant and searched him. The appellate court held that the information obtained from the witness, coupled with the large number of residential burglaries in the area, justified the initial stop and the subsequent search. *Solis*, 135 Ill. App. 3d at 995.

In both of the cases that the State cites, there were specific and articulable facts present to justify the stop and the search. Such is not the case in the case at bar. Detective Brahme stated that he searched defendant because he was "concerned about weapons in the area." However, no weapons were found on any of the individuals searched. In addition, a search of the area around the vehicle revealed no weapons. We further note that the recent supreme court decision in *People v. Galvin* (1989), 127 Ill. 2d 153, supports the trial court's ruling in the case at bar. In *Galvin*, the police stopped the defendant's vehicle and searched the defendant, notwithstanding the fact that no statutory violations were observed. The search turned up a rifle ammunition magazine, a screwdriver, and a flashlight. The defendant was placed under arrest for theft and possession of burglary tools. 127 Ill. 2d at 161.

■ The trial court granted the defendant's motion to suppress, and the appellate court affirmed. (*People v. Galvin* (1987), 161 Ill. App. 3d 190.) The supreme court also affirmed, holding that the trial court's ruling was not manifestly erroneous. (127 Ill. 2d at 164.) The court stated that the validity of a frisk after a stop must be reviewed under an objective standard. (127 Ill. 2d at 167, citing *People v. Lee* (1971), 48 Ill. 2d 272, 276.) The court could find no specific fact which would warrant the police officer's belief that his safety was in danger at any time. (127 Ill. 2d at 169.) In addition, the mere fact that a valid *Terry* stop was made did not automatically authorize a search. (127

Ill. 2d at 170.) The court stated that the reasonableness of a search necessarily depends upon the particular facts of the case. 127 Ill. 2d at 173; *People v. Williams* (1974), 57 Ill. 2d 239, 246.

■■ After examining the record in the instant case, we can find no specific and articulable facts which would indicate to a reasonably prudent person that defendant was armed and dangerous. Simply because Detective Brahme believed that there may be weapons in the area did not give him the right to search everyone present in the 1800 block of Greenfield Street. In addition, the record is clear that defendant was not present in the 1800 block of Greenfield during the initial surveillance. Defendant did not arrive on Greenfield until after 10 p.m., at which time Detective Brahme had already left Greenfield Street to obtain additional officers. We do not believe that the trial court's ruling was manifestly erroneous.

For the above stated reasons, the order of the circuit court of Lake County is affirmed.

Affirmed.

UNVERZAGT, P.J., and DUNN, J., concur.